UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEATHER BROTHERS, INC.,

       Plaintiff,

v.     Case No.: 6:23-cv-439-WWB-LHP

SPRINGHAUS, LLC,

       Defendant.
_____/

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Time Sensitive Motion for Preliminary Injunction (Doc. 7) and Defendant's Response (Doc. 11). The parties agree that no evidentiary hearing is necessary for the resolution of the Motion. (Doc. 10 at 1). For the reasons set forth below, the Motion will be granted.

**I.     BACKGROUND**

Plaintiff Leather Brothers, Inc. is a pet product company established in 1976. (Doc. 7-1 at 2). Plaintiff manufactures and distributes a wide variety of pet care products, including treats, feeding accessories, pet care accessories, dog training products, pet furniture, and toys. (*Id.* at 3). Plaintiff's customers include leading retailers, independent dealers, distributors, internet companies, chain stores, and e-commerce sales. (*Id.*). As relevant to this case, Plaintiff's OMNIPET® brand lines has been its primary housemark since June 1997. (*Id.* at 3–4). In January 1999, the United States Patent and Trademark Office ("**USPTO**") issued a registration for the OMNIPET® mark in connection with "pet products, namely collars, leashes, harnesses, tie-out chains, tie-out stakes and choke chains." (*Id.* at 4). Since 1997, Plaintiff has expended time and money building and

promoting its business using the OMNIPET® mark. (*Id.*).  Plaintiff spends six figures annually marketing and advertising the OMNIPET® brand, including through its website and Facebook page, and at trade shows, such as the Global Pet Expo in Orlando, Florida. (*Id.*).  Plaintiff states that the Global Pet Expo, which is starting on March 22, 2023, is one of the largest and most important pet trade shows in the country and is crucial to serving its existing customers and presenting itself to new ones.  (*Id.* at 5).  Plaintiff makes significant product sales at trade shows.  (*Id.*).

In February 2023, Plaintiff was contacted by a collection agency for the State of Ohio regarding unpaid Commercial Activity Tax.  (*Id.*).  Upon further investigation, Plaintiff became aware that Defendant Springhaus, LLC was using the mark OMNIPETS, including using the websites www.omnipets.co and www.facebook.com/Omnipetsok. (*Id.*).  Plaintiff also learned that Defendant is registered to attend the Global Pet Expo as an exhibitor under the OMNIPETS mark.  (*Id.*; Doc. 7-5 at 2).

The main offices for Defendant and OmniPets LLC, a separate company, are located in Buenos Aires, Argentina.  (Doc. 11-1, ¶ 4).  Defendant produces, sells, and exports specialty crops, and OmniPets LLC produces, sells, and exports cat litter and pet food, primarily in the Latin American market.  (*Id.*).  OmniPets LLC sells cat litter under the brand names BioStones and OmniCat and pet food under the brand names OmniCan, OmniCat, and Vestigio, all of which are duly registered in Argentina and surrounding countries.  (*Id.* ¶¶ 5–6).  Defendant has used OmniPets as an alternative company name since May 5, 2021, after conducting due diligence and determining it was available for use.  (*Id.* ¶ 10).  Defendant filed an application for the OMNIPETS mark with the USPTO for "pet food" on October 31, 2022, citing its first use date as May 5, 2021.  (Doc. 7-1 at

6; Doc. 7-6 at 2–4; Doc. 11-1, ¶ 11). Pursuant to its application and advertising, Defendant purports to sell pet food, pet wellness products, and pet toys and accessories under the OMNIPETS mark. (*Id.* at 6; Doc 7-4 at 2–6). Defendant does not have an office in New York or Ohio and has never done business in either state. (Doc. 11-1, ¶¶ 12–13). Defendant and OmniPets LLC have not sold products in the United States. (*Id.* ¶ 7).

Plaintiff sent Defendant a demand letter on February 21, 2023, regarding use of the OMNIPETS mark and contacted Defendant a second time on March 13, 2023. (Doc. 7-7 at 2–4; Doc. 7-8 at 2). To date, Defendant's website is still active. (Doc. 7-1 at 6). Plaintiff fears that customers may encounter Defendant at the Global Pet Expo and potentially purchase its products with the belief they are purchasing from Plaintiff or a company affiliated with Plaintiff, which could cause Plaintiff to lose sales and suffer harm to its OMNIPET® brand, goodwill, and reputation. (*Id.*). As a result, Plaintiff filed a Complaint (Doc. 1) against Defendant for Trademark Infringement (Count I), Unfair Competition (Count II), Cybersquatting (Count III), and Common Law Trademark Infringement and Unfair Competition (Count IV), and the underlying Motion seeking a preliminary injunction.

## II.     LEGAL STANDARD

"The grant or denial of a preliminary injunction is within the sound discretion of the district court[.]" *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). A district court may only grant injunctive relief if the moving party establishes: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the

proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion' as to each of the four prerequisites." *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

## III.   DISCUSSION

Plaintiff seeks a preliminary injunction to enjoin Defendant, its officers, agents, servants, employees, and attorneys, and all other person who are in active concert or participation with them, from infringing Plaintiff's rights in the trademark OMNIPET®, unfairly competing with Plaintiff in violation of federal and state law, and using the domain name, www.omnipets.co, in connection with its business.  (Doc. 7 at 1).

### A.   Likelihood of Success on the Merits

The first prerequisite—substantial likelihood of success on the merits—"is generally the most important." *Backjoy Orthotics, LLC v. Forvic Int'l Inc.*, No. 6:14-cv-249-Orl, 2015 WL 12915119, at *3 (M.D. Fla. July 28, 2015) (quotation omitted). "[T]o prevail on its motion for injunctive relief, Plaintiff must only demonstrate a substantial likelihood of success as to one cause of action." *Quality Lab. Mgmt., LLC v. Mullen*, No. 6:21-cv-589, 2021 WL 4948140, at *2 (M.D. Fla. July 12, 2021) (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001)).  To establish a claim for trademark infringement under 15 U.S.C. § 1125, Plaintiff must demonstrate "first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989).

Because it is undisputed that Plaintiff's mark is valid, Plaintiff must only prove that Defendant's use of OMNIPETS is likely to cause confusion. *Id.* "While there is no bright line test to determine the existence of a likelihood of consumer confusion . . . at a minimum . . . confusion, mistake, or deception [must] be likely, not merely possible." *Custom Mfg. & Eng'g, Inc. v. Midway Servs, Inc.*, 508 F.3d 641, 651 (11th Cir. 2007) (quotation omitted).

In the Eleventh Circuit, courts consider the following factors to determine whether a likelihood of confusion exists between two marks:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1280–81 (11th Cir. 2020) (quotation omitted). "The district court need not consider all factors in every case." *Id.* at 1281 (citation omitted). "But . . . 'the type of mark and the evidence of actual confusion are the most important' of all the factors." *Id.* (quoting *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016)).

1. *Type of Mark*

There are four categories of marks, in ascending order of strength: "(1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of

trademarks." *Id.* at 1282 (quoting *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797–98 (11th Cir. 2003)). "Arbitrary, fanciful, and suggestive marks are generally strong." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 949 (11th Cir. 2023) (citation omitted).

Plaintiff argues that OmniPet® is an arbitrary mark because it is not a real word and neither describes, nor suggests anything about the goods marketed and sold under the mark. "An arbitrary or fanciful mark bears no relationship to the product or service with which it is associated." *Popular Bank of Fla. v. Banco Popular de P.R.*, 9 F. Supp. 2d 1347, 1357 (S.D. Fla. 1998). Examples of arbitrary or fanciful marks are KODAK, POLAROID, XEROX, APPLE, and IVORY. *Great S. Bank v. First S. Bank*, 625 So. 2d 463, 467 (Fla. 1993). The Court, however, finds that the mark is more of a suggestive mark as it includes the word "pet" and the goods marketed and sold are in fact pet products. "A suggestive mark suggests some characteristic of the product or service to which it is applied, but requires the consumer to use his imagination to determine the nature or the product or service." *Popular Bank of Fla.*, 9 F. Supp. 2d at 1356–57 (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 974 (11th Cir. 1983)); *see also Great S. Bank,* 625 So. 2d at 468 ("Suggestive marks include ARTYPE for cutout letters for artists, COPPERTONE for sun tan oil, FROM MAINE'S COOL BREEZE TO THE FLORIDA KEYS for a moving service, GOBBLE GOBBLE for processed turkey meat, HEARTWISE for low-fat foods, and TELECHRON for electric clocks.")).

Defendant argues that Plaintiff's mark is weakened by third-party usage. "[A]s a general matter, third-party use has the potential to weaken a finding of a mark's strength." *Savannah Coll. of Art & Design*, 983 F.3d at 1283. "Indeed, when extensive third-party

6

use has occurred, that diminishes a mark's strength." *Id.* (citations omitted). Defendant has submitted screen shots from various state websites of three other entities with similar names. (Doc. 11-2 at 2, 4, 7, 11–12). However, there is no evidence that such entities are in fact active and how they are utilizing the name. *FCOA LLC*, 57 F.4th at 951 ("[T]he mere fact that a mark has been registered or that a business is named in a registry is not evidence of third-party *use*."). Thus, Defendant has failed to demonstrate at this stage that Plaintiff's mark has been weakened by third-party usage.

    2. *Similarity of the Marks*

The parties' trademarks are identical save for Defendant adding an "s" to OmniPet. *Id.* at 953 (discussing that minor differences do not avoid confusion when the dominant portion of marks is the same). The cases cited by Defendant are distinguishable. For example, the dissimilarities in the marks for Domino Sugar and Domino's Pizza go beyond the addition of an "'s," rendering the marks sufficiently dissimilar to thwart the likelihood of consumer confusion. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 261 (5th Cir. 1980) ("The impression conveyed by defendants' use of 'Domino's Pizza' is substantially different from that created by plaintiff's use of 'Domino Sugar.'"); *see also Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (finding the parties' marks visually dissimilar and the words "Welding Technologies, Inc." appear below the WTI mark preventing confusion between the two logos).

    3. *Similarity of the Goods*

With respect to this prong, the question is "whether the products are the kind the public attributes to a single source." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985). "The greater the similarity between the

7

products and services, the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). Both parties sell pet products. While Plaintiff does not sell pet food, it does offer food bowls and rawhides, and Defendant purports to sell pet accessories. Accordingly, there is a strong similarity between the parties' goods.

### 4. *Similarity of Sale and Advertising Methods*

"The similarity of the parties' retail outlets and customers takes into consideration where, how, and to whom the parties' products are sold." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 940 (11th Cir. 2010) (quotation omitted). "The parties' outlets and customer bases need not be identical, but some degree of overlap should be present." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999). "[T]he similarity of trade channels analysis focuses on whether the medium (e.g., stores, agents, online, mail, etc.) that customers frequent would expose them to both marks, not on whether the products or services are sold in the same location or manner." *FCOA LLC*, 57 F.4th at 954 (citation omitted).

Both parties advertise their products online through their websites and social media, as well as industry trade shows. Although Defendant emphasizes that the majority of its sales occur outside of the United States and its websites focus on "animal welfare," it plans to attend the same trade show as Plaintiff with the intent to sell its pet products utilizing the OmniPets mark. *See Evol Nutrition Assocs., Inc. v. Supplement Ctr., LLC*, No. 1:17-CV-01572, 2017 WL 8292439, *4 (N.D. Ga. Aug. 17, 2017) (granting preliminary injunction in part because both parties advertised online and at trade shows). Thus, the parties' advertising and sale methods sufficiently overlap so that this factor weighs in

Plaintiff's favor.  *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1188 (11th Cir. 2015).

    5.  *Intent*

  "A defendant's intent to deceive buyers is merely one factor to be considered in determining whether there is a likelihood of confusion."  *Exxon Corp.*, 628 F.2d at 506. "Thus, while intent is of some probative value, particularly if a bad intent is shown, it is neither a necessary nor sufficient condition for determining the ultimate legal fact of the 'likelihood of confusion.'"  *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 843 n.23 (11th Cir. 1983).

  Plaintiff argues that it is highly unlikely that Defendant was not aware of Leather Brothers and its use of and rights in the OMNIPET® mark before it commenced its infringement because Plaintiff has been using the mark for pet products since 1997, and it markets and sells its products throughout the United States and internationally.  Further, Plaintiff sells its products through major channels such as Amazon and Chewy and has had a federal trademark registration for the mark since 1999.  Alternatively, Defendant claims it became aware of Plaintiff's use and rights in the OMNIPET® mark when it received notification from Plaintiff's counsel, and yet continues to use the mark. Defendant counters that it sells its products in Latin America, which are duly registered in Argentina, and it filed an application with the USPTO to trademark OmniPets to sell pet food.  The application is still pending and remains unopposed.  Although the Court finds

9

that there is little evidence that Defendant intended to deceive buyers, the lack of intent is not dispositive.

### 6. *Actual Confusion*

Finally, Plaintiff argues that there is evidence of actual confusion because it was contacted by a collection agency for the State of Ohio regarding unpaid taxes. (Doc. 7-3 at 2). Defendant responds that Ohio was calling about a different Omnipets. Such call, however, is not strong evidence of actual confusion. *Cf. Savannah Coll. of Art & Design, Inc.*, 983 F.3d at 1286 (finding the plaintiff's employee's confusion as to whether a link to the defendant's website represented an authorized use of the plaintiff's trademark weak evidence of actual confusion). However, "[t]he law is well settled in this circuit that evidence of *actual* confusion between trademarks is not necessary to a finding of *likelihood* of confusion, although it is the best such evidence." *E. Remy Martin & Co.*, 756 F.2d at 1529. Thus, the lack of evidence of actual confusion does not completely undermine the likelihood of confusion.

### 7. *Conclusion*

Considering all of the factors, the Court finds that Plaintiff has demonstrated that OmniPet® is a suggestive mark, that the OmniPets mark is strikingly similar, the parties' pet products overlap, and that both parties advertise on the internet, social media and intend to attend the same trade show. Accordingly, the Court finds that there is a sufficiently strong showing that consumers will be confused by the parties' marks so that Plaintiff is likely to succeed on the merits of Counts I and II of its Complaint.

### B.   Irreparable Harm

The Eleventh Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *E. Remy Martin & Co. v. Shaw–Ross Int'l Imps.*, 756 F.2d 1525, 1530 (11th Cir.1985)); *see also ATP Sci. Proprietary, Ltd. v. Bacarella*, No. 20-cv-60827, 2020 WL 3868701, at *6 (S.D. Fla. July 9, 2020) ("The Eleventh Circuit has acknowledged that once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, there is a presumption of irreparable harm." (quotation omitted)).  Here, because the Court finds that Plaintiff has shown a substantial likelihood of success on the merits of its trademark infringement claim, it presumes that Plaintiff will suffer irreparable harm absent an injunction.  The Court further finds that Defendant has not sufficiently rebutted this presumption.

### C.   Balancing the Harms

The Court must consider "whether the threatened injury to Plaintiffs outweighs whatever damage an injunction might cause the Defendants." *Dunkin' Donuts Franchised Rests. LLC v. D & D Donuts, Inc.*, 566 F. Supp. 2d 1350, 1361 (M.D. Fla. 2008) (citing *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001)).  Here, "[t]he inquiry is whether the probable loss of consumer goodwill outweighs the Defendants' losses arising from their inability to sell product using the trademark until a decision on the merits." *Id.* at 1361.  Although Defendant will suffer financial losses from not being able to sell its products using the OmniPets mark ahead of a decision on the merits, Plaintiff's immeasurable losses to its earned goodwill outweigh such losses to Defendant.

11

### D. Public Interest

"A preliminary injunction in this case 'is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace.'" *Dunkin' Donuts Franchised Rests. LLC v. KEV Enters., Inc.*, 634 F. Supp. 2d 1324, 1336 (M.D. Fla. 2009) (citing *Davidoff*, 263 F.3d at 1304).

### E. Bond

Federal Rule of Civil Procedure Rule 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "[I]t is well-established that the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (quotation omitted).

For the reasons set forth in Defendant's Declaration (Doc. 11-1), the Court finds that Plaintiff must post a bond of $10,000 for the payment of costs and damages that may be incurred or suffered by Defendant in the event they are found to have been wrongfully enjoined or restrained.

## IV. CONCLUSION

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Time Sensitive Motion for Preliminary Injunction (Doc. 7) is **GRANTED**.

2. Defendant Springhaus, LLC and its respective officers, directors, agents, employees, and attorneys, and any other persons in active concert or

participation with them who receive actual notice of this Order by personal service or otherwise shall hereby be **ENJOINED** and **RESTRAINED** from:

    a. Any and all use of the name or mark OMNIPETS at the Global Pet Expo in Orlando, Florida on March 22-24, 2023, or otherwise as a trade or business name, trademark or service mark, or internet domain address or name, on or in connection with the promotion and/or sale of any goods or services offered for sale;

    b. Further infringing the rights of Plaintiff in and to any OMNIPET® mark or name, or otherwise damaging Plaintiffs' goodwill or business reputation.

3. Plaintiff shall post a bond in the amount of **$10,000** by the close of business on March 21, 2023.  Plaintiff is advised that failure to post bond as ordered will render the preliminary injunction ineffective.

**DONE AND ORDERED** in Orlando, Florida on March 21, 2023.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record